IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAIDEN BIOSCIENCES, INC.,     *

     Plaintiff,     *

        Civil Action No. RDB-17-3029

     v.     *

MPM MEDICAL, INC., *et al.*,     *

     Defendants.     *

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

## MEMORANDUM OPINION

Plaintiff Maiden Biosciences, Inc. ("Plaintiff" or "Maiden") brings this action against MPM Medical, Inc. ("MPM") and RBC Lifesciences, Inc. ("RBC") (collectively, "Defendants"), alleging that Defendants breached a supply agreement for the purchase of custom-made wound dressings. (Am. Compl., ECF No. 13.) Presently before this Court is Defendants' Motion to Dismiss the Amended Complaint or, in the alternative, Transfer this case to the United States District Court for the Northern District of Texas.[1] (ECF No. 14.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendants' Motion to Transfer (ECF No. 14) is GRANTED.[2] All pending arguments, including Defendant RBC's argument that it is an improper Defendant, will remain pending for disposition in the transferee court.

---

[1] Also pending before this Court is Defendants' Motion to Dismiss the Original Complaint. (ECF No. 8.) This motion is MOOT.

[2] Also pending is Plaintiff's Motion to Supplement the Record. (ECF No. 19.) This Motion relates only to Defendant RBC's argument that it is an improper Defendant because it is a separate and distinct entity from Defendant MPM. Because this Court grants Defendants' Motion to Transfer and does not reach RBC's argument, Plaintiff's Motion is DENIED.

# BACKGROUND

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Defendant MPM Medical, Inc. ("MPM"), a Texas corporation, is a pharmaceutical supply company that sells products through medical, surgical, and pharmaceutical distributors. (ECF No. 14-3 at ¶ 9.) MPM's Vice President and General Manager, Gerald Pyle, testified that MPM has sixteen direct employees nationwide and does not actively engage in business in Maryland. (*Id.* at ¶ 10, 17.) He testified that, for instance, MPM does not directly advertise or target Maryland for its customers, and none of MPM's six nation-wide sales representatives are assigned to Maryland or live closer than Detroit, Michigan or Chicago, Illinois. (*Id.* at ¶ 18.) Defendant RBC Lifesciences, Inc. ("RBC"), a Nevada corporation, is the parent holding company of MPM. (Brown Aff., ECF No. 14-2 at ¶ 4; Pyle Aff., ECF No. 14-3 at ¶ 7.) RBC's Chief Executive Officer and President, Steven Brown, testified that RBC does not sell any products, own any real or personal property, or advertise in Maryland. (ECF No. 14-2 at ¶ 7.)

Plaintiff Maiden Biosciences, Inc. ("Maiden"), a Maryland corporation, is a small biotech company that manufactures wound dressing. (Am. Compl., ECF No. 13 at ¶ 14.) Maiden was established in 2016 at the John Hopkin's University Montgomery County Campus in Montgomery County, Maryland. (*Id.*) Maiden only has two employees who are also the company's two owners. (Gorman Aff., ECF No. 17-2 at ¶ 15). One of the owners is Mark Gorman,[3] who is also the Chief Executive Officer and Director of Business and

---

[3] The Amended Complaint does not identify the company's second owner. However, Daniel Zang is

Development. (*Id.* at ¶ 4.) Prior to working for Maiden, from 2011 to 2016, Gorman worked for another wound care product manufacturer, Human Biosciences, Inc. ("HBS"). (*Id.* at ¶ 17.) During Gorman's employment with HBS, Defendant MPM purchased wound care products from HBS. (*Id.* at ¶ 18.) Specifically, the Amended Complaint alleges that Gorman received orders from Gerald Pyle for products including Triple Helix Collagen Powder and Triple Helix Sheets. (ECF No. 13 at ¶¶ 17, 19.)

In April of 2016 at a Symposium on Advanced Wound Care, the Amended Complaint alleges that Pyle expressed to Gorman his disappointment with HBS and his concerns regarding the company's ability to continue to supply products to MPM. (*Id.* at ¶¶ 22-24; Gorman Aff., ECF No. 17-2 at ¶ 19.) Gorman testified that "as a result" of hearing Pyle's concerns, "[he] referred [Pyle] to Maiden." (ECF No. 17-2 at ¶ 19.) Subsequently, Pyle contacted Maiden and expressed MPM's interest in purchasing products from Maiden. (*Id.* at ¶ 20.) On or around September 2, 2016, MPM and Maiden entered into a Supply Agreement (the "Agreement"). (ECF No. 13 at ¶ 24; ECF No. 1-2.) Pyle signed the Agreement electronically in Texas while Daniel Zang signed it electronically on behalf of Maiden in Maryland. (ECF No. 13 at ¶ 29.)

The Agreement was between Maiden and its contract manufacturer Anteco Pharma, a Wisconsin corporation, and MPM. (ECF No. 1-2.) The Amended Complaint asserts that Anteco was "included solely for its role as the operator of the manufacturing facility used by Maiden." (ECF No. 13 at ¶ 25 n. 4.) The Agreement also provides that its terms are

---

identified in the Supply Agreement at issue as Maiden's "Director of Operations." (ECF No. 1-2.) Given that Maiden asserts it only has two employees who are also the company's owners, Zang is presumably Maiden's second owner.

governed by Texas state law. (ECF No. 1-2. at ¶ 12.5.) Under the Agreement, MPM was to purchase a minimum of 600,000 units of Triple Helix Collagen from Maiden each calendar year with a prorated amount for 2016. (*Id.* at ¶ 2.11). Further, the Agreement prohibited MPM from contracting with any other manufacturer for the relevant products so long as Maiden and Anteco were not in default under the Agreement. (*Id.* at ¶ 2.1.C.)

While MPM did place one order for 100,000 Triple Helix Collagen units in February of 2017, Plaintiff alleges that MPM breached the Agreement by not ordering the prorated amount for 2016 or the total 600,000 units in 2017. (ECF No. 13 at ¶¶ 46-47.) The Amended Complaint alleges that MPM's failure to abide by the Agreement is in part because MPM continued to purchase products from HBS, also violating the Agreement's exclusivity clause. (*Id.* at ¶ 36.) Further, Maiden alleges that MPM never paid for an order of Triple Helix Sheets. (*Id.* at ¶¶ 49-52.) On October 16, 2017, Plaintiff filed a Complaint in this Court, alleging two counts of breach of contract and unjust enrichment. (Compl., ECF No. 1; Am. Compl., ECF No. 13.) Defendants move to dismiss the Complaint, arguing that (1) RBC is not a proper Defendant, (2) this Court does not have personal jurisdiction over RBC or MPM, and (3) venue is improper under the doctrine of *forum non conveniens*. Alternatively, Defendants request that this Court transfer this action to the United States District Court for the Northern District of Texas under 28 U.S.C. § 1404.

## STANDARD OF REVIEW

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Notably, § 1404(a) "reflects

an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The movant bears the burden of showing that transfer to another venue is proper. *See Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004). A district court has great discretion in determining whether to transfer a case under § 1404(a), and the decision is made according to an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998); *Capitol Payment Systems, Inc. v. Di Donato*, No. ELH-16-882, 2017 WL 2242678, at *8 (D. Md. May 23, 2017).

## ANALYSIS

In support of their motion to dismiss, Defendants MPM Medical, Inc. and RBC Lifesciences, Inc. contend that (1) RBC is not a proper Defendant, (2) this Court does not have personal jurisdiction over RBC or MPM, and (3) venue is improper under the doctrine of *forum non conveniens*. Alternatively, Defendants request that this Court transfer this action to the United States District Court for the Northern District of Texas under 28 U.S.C. § 1404. For the reasons that follow, this case will be transferred to the United States District Court for the Northern District of Texas.

Venue is proper in diversity cases in the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." In determining whether

venue is proper for a breach of contract claim, "'courts consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.'" *Structural Group, LLC v. Fyfe Co., LLC*, No. CCB-14-78, 2014 WL 3955439, at *3 (D. Md. Aug. 11, 2014) (quoting *Largotta v. Banner Promotions, Inc.*, 356 F. Supp. 2d 388, 390 (S.D.N.Y. 2005)). On the other hand, a court may still transfer a case even if venue is proper if a defendant shows "by a preponderance of the evidence that the proposed transfer will better and more conveniently serve the interests of the parties and witnesses and better promote the interests of justice." *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2014). When ruling on a motion to transfer, a court must first determine whether the action could have been brought in the transferee district. *Trs. of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Serv.'s, Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). If the action could have been brought in the transferee district, a court then must consider several factors, including "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice." *Id.* (citations omitted). Without deciding whether this Court is in fact a proper venue for Plaintiff's claims, this Court finds that transfer is warranted under 28 U.S.C. § 1404.[4]

---

[4] Defendants' Motion first seeks to dismiss this case under the doctrine of *forum non conveniens*, or in the alternative, transfer the case under 28 U.S.C. § 1404. As the United States Supreme Court stated in *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 430, 127 S. Ct. 1184 (2007), "[t]he common law doctrine of *forum non conveniens* 'has continuing application [in federal courts] *only in cases* where the alternative forum is abroad,' . . . For the federal court system, Congress has codified the doctrine and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action." (emphasis added); *see also Seidel v. Kirby*, __ F. Supp. 3d __, 2017 WL 4865486 (D. Md. Oct. 27, 2017) ("[T]he doctrine of *forum non conveniens* is only applicable when a party is arguing that the case should be dismissed or stayed pending resolution in a foreign court." (quoting *Sinochem Intern.*, 549 U.S. at 430, 127 S. Ct. 1184)). Because Defendants seek transfer this case to a "sister federal court" and not abroad or to a state court, the doctrine of *forum non conveniens* does not apply and the Motion is analyzed under 28 U.S.C. § 1404.

## I. This Case Could Have Been Brought in the United States District Court for the Northern District of Texas

"To establish that an action could have been brought in the proposed transferee district, the movant must show that the district is a proper venue and that the transferee court would have personal jurisdiction over the defendant." *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 (D. Md. 2009) (citing *Koh v. Microtek Int'l, Inc.,* 250 F. Supp. 2d 627, 630 (E.D. Va. 2003)). Venue is proper in, among other places, "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). In a state that has more than one judicial district, such as Texas, a corporation is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." *Id.* at § 1391(d). Maiden does not dispute that this case could have been brought in the Northern District of Texas, where both of the Defendants' offices are located. Accordingly, the United States District Court for the Northern District of Texas is a proper venue and would have personal jurisdiction over RBC and MPM. Having determining that this case could have been brought in the transferee district, this Court analyzes whether transfer is warranted.

## II. Maiden's Choice of Venue

The first factor requires this Court to consider the weight that should be accorded to Maiden's choice of venue. While ordinarily a plaintiff's choice of venue is "entitled to substantial weight," *Topivala v. Wessell*, No. WDQ-11-0543, 2012 WL 122411, at *7 (D. Md. Jan. 12, 2012) (quoting *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002)), a plaintiff's choice is afforded less weight "when the chosen forum is not the plaintiff's home or has little connection to the events giving rise to the litigation." *Id.* (citing *Tse v.*

*Apple Computer*, No. 05–2149, 2006 WL 2583608, at *2 (D. Md. Aug. 31, 2006)). As the United States District Court for the Eastern District of North Carolina has explained, "the deference given to a plaintiff's choice of forum is proportionate to the relationship between the forum and the cause of action." *Bannister v. Wal-Mart Stores E., L.P.*, 843 F. Supp. 2d 610, 615 (E.D.N.C. 2012).

Although Maiden is a Maryland corporation, this Court notes that Gorman—one of the company's only two owners and employees—has a permanent address in Florida. (ECF No. 17-2 at ¶ 3.) Turning to whether Maryland has a connection to the events giving rise to Plaintiff's claims, this factor weighs in favor of transfer.  In short, there is a significant issue with respect to this Court's exercise of personal jurisdiction over Defendant MPM.[5] Before a court can exercise personal jurisdiction over a non-resident defendant, it must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure; and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *Under Armour, Inc. v. Battle Fashions, Inc.*, 294 F. Supp. 3d 428, 432 (D. Md. 2018). The due process inquiry requires that a defendant "have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). As Judge Hollander of this Court has previously noted, "[i]n the context of a contractual

---

[5] This analysis is also relevant to this Court's jurisdiction over Defendant RBC given Maiden's theory that this Court has personal jurisdiction over RBC because "Maryland can exercise personal jurisdiction over a company acting as the alter ego of another company over which Maryland has personal jurisdiction." (ECF No. 17 at 16.)

relationship, the [Supreme Court] stated unequivocally that entering into a contract with a citizen of the forum state 'alone' cannot 'automatically establish minimum contacts' over a nonresident defendant." *Chartier v. M. Richard Epps, P.C.*, No. ELH-14-1071, 2014 WL 4748629, at *7 (D. Md. Sept. 23, 2014) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174 (1985)) (emphasis omitted). In order for a single act to support jurisdiction, the act must "create a substantial connection with the forum" so that the principles of "fair play and substantial justice" are not thereby offended. *Id.* (internal citations omitted).

The only connection this forum has to Plaintiff's contract claims is that one party to the contract, Maiden, is incorporated and has its office in Maryland. On the other hand, RBC and MPM are not Maryland corporations, do not maintain officers or agents in Maryland, and did have any agents visit Maryland while negotiating the Supply Agreement. Further, none of the terms of the Supply Agreement contemplated—or resulted in— Maiden's products being manufactured in Maryland. Rather, the Supply Agreement included the third party Anteco Pharma, a Wisconsin corporation, "for its role as the operator of the manufacturing facility used by Maiden." (Am. Compl., ECF No. 13 at ¶ 25 n. 4; ECF No. 1-2.) Subsequently, the packing slips for the two orders that MPM actually placed with Maiden show that the shipper for both orders was located in Whippany, New Jersey. (ECF No. 14-4.) Given that Maryland has relatively slight connection to the Defendants or to the events giving rise to Maiden's claims, the first factor supports transferring this case.

### III.     Witness Convenience and Access and the Convenience of the Parties

A party claiming witness inconvenience "has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable

the court to assess the materiality of evidence and the degree of inconvenience." *Topiwala v. Wessell*, No. WDQ-11-0543, 2012 WL 122411 at *7 (D. Md. Jan. 12, 2012) (quoting *Koh v. Microtek Int'l*, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003)). The inconvenience of non-party witnesses is weighed more heavily than the inconvenience of party witnesses, "who are presumed willing to travel to another forum." *Id.* (citing *Atl. City Assocs. No. 2, LLC v. Reale*, No. CCB–11–0078, 2011 WL 1769842, at *3 (D. Md. May 9, 2011)). Transfer of venue is "inappropriate" where it will merely "'shift the balance of convenience'" from plaintiff to defendant. *Id.* (quoting *Bd. of Trs. v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1258 (E.D. Va. 1988)).

Defendants argue that transfer is warranted because at least four of its trial fact witnesses are Texas-based, and the two witnesses who are not are from Wisconsin and New Jersey—where the manufacturers of Maiden's products are located. (ECF No. 18-1.) Furthermore, Defendant MPM asserts that Gerald Pyle, Vice President and General Manager of MPM and the MPM employee who signed the Agreement, has difficulty flying and difficulty with mobility generally. (ECF No. 14-3 at ¶ 34.) MPM contrasts Pyle's travel abilities to those of Mark Gorman, who visited Texas multiple times in connection with the Agreement. (ECF No. 18 at 14.) In response, Maiden asserts that it "plans to call many current employees of HBS as witnesses at trial" to support Maiden's theory that MPM breached the Supply Agreement in part because it continued to purchase products from HBS—a corporation registered in and doing business in Maryland—and accordingly those witnesses are located in Maryland. (ECF No. 17 at 22.) Weighing the parties' arguments, this Court finds that this factor neither weighs for nor against transfer.

## IV. The Interest of Justice

The interest of justice element "'encompass[es] all those factors bearing on transfer that are unrelated to convenience of witnesses and parties.'" *Topiwala*, 2012 WL 122411 at *8 (quoting *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 857 (D. Md. 2005)). As this Court noted in *Capitol Payment Systems, Inc. v. Di Donato*, No. ELH-16-882, 2017 WL 2242678 (D. Md. May 23, 2017), "[t]his factor is 'amorphous and somewhat subjective,' and allows a court to 'consider many things.'" 2017 WL 2242678, at *11 (citing Wright and Miller, § 3854 at 313-18.) "Familiarity with applicable law is one of the interests of justice factors." *Aphena Pharma Solutions-MD LLC v. BioZone Laboratories, Inc.*, 912 F. Supp. 2d 309, 320 (D. Md. 2012) (citing *Dicken v. United States*, 862 F. Supp. 91, 93-94 (D. Md. 1994)). Relatedly, this Court has explained that "[o]ther factors include the 'local interest in having localized controversies settled at home' and the 'appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action.'" *Capitol*, 2017 WL 2242678, at *7 (quoting *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2014))).

The parties agreed to have Texas law govern the Supply Agreement. Further, Defendant RBC argues that it is not a proper Defendant in this action because Maiden has not pled facts sufficient to allow Maiden to pierce the corporate veil and hold RBC liable as MPM's parent company. Transferring this case would ensure that it is a Texas court that applies Texas law to determine whether RBC is an "alter ego" of MPM, a Texas corporation, and accordingly whether the remedy of piercing the corporate veil is appropriate here. *See Davaco, Inc. v. AZ3, Inc.*, No. 3:07-cv-803, 2008 WL 2243382, at *1 (N.D. Tex. May 30, 2008)

("[T]he law of the state of incorporation governs the alter ego analysis." (citations omitted)).

"Ultimately, '[t]he decision whether to transfer is committed to the sound discretion of the trial court.'" *Capitol Payment*, 2017 WL 2242678, at *8 (quoting *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008)). Maryland's relatively slight connection to the events giving rise to this case and the interest of justice outweigh any potential inconvenience to Maiden's parties or witnesses. Accordingly, this Court GRANTS Defendants' Motion to Transer (ECF No. 14) and this case is TRANSFERRED to the United States District Court for the Northern District of Texas.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Transfer (ECF No. 14) is GRANTED. Accordingly, this case will be transferred to the United States District Court for the Northern District of Texas. All presently pending arguments for dismissal of this action will remain pending for consideration in that Court.

A separate Order follows.

Dated: May 29, 2018

_____/s/_____

Richard D. Bennett
United States District Judge